Filed 7/15/15; pub. order 7/31/15 ( see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

THE PEOPLE,

     Petitioner,

v.

THE SUPERIOR COURT OF
SAN BERNARDINO COUNTY,

     Respondent;

JOHNNY MORALES,

     Real Party in Interest.

E061754

(Super.Ct.No. FVA015456)

OPINION

ORIGINAL PROCEEDINGS; petition for writ of mandate. Ingrid Adamson Uhler, Judge. Petition granted.

Kamala D. Harris, Attorney General, Julie L. Garland, Senior Assistant Attorney General, Holly D. Wilkens and Michael T. Murphy, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

1

Michael J. Hersek, State Public Defender, and Cheryl Delaine Renard, Senior Deputy State Public Defender, for Real Party in Interest.

On request of real party in interest Johnny Morales, the trial court entered an order requiring multiple public agencies and departments to "preserve" 22 categories of documents and other materials[1] allegedly to pertain in some way to the criminal proceedings which resulted in a judgment of death against petitioner.

The People sought review by way of petition for writ of mandate from this court, arguing that the trial court had no jurisdiction to make such an order in the absence of any pending proceeding. We agree that the order is erroneous, and will grant the relief requested.

### STATEMENT OF THE CASE

Morales's motion requested that "materials potentially relevant to his case be kept intact so that future litigation can center on the fairness of his conviction and death sentence, and not on tangential issues such as whether materials should have been destroyed or whether destroyed materials would have favored the prosecution or appellant [Morales]." It appears that Morales was sentenced in 2005 and his appeal is pending before the Supreme Court of California. Morales asserted, without contradiction, that although he has been appointed appellate counsel (who prepared the motion), he has not yet been appointed counsel to pursue any habeas corpus remedy.

---

[1] A copy of real party in interest's order, consisting of seven pages, listing the 22 categories of documents he wishes to preserve is attached as Appendix A, *post*.

It was also asserted in the motion that "the duty falls to appellate counsel to preserve all materials arguably governed by [Penal Code] section 1054.9[2] so that the Legislature's intention to provide condemned people like appellant with postjudgment discovery can be given full force and effect."[3]

The People opposed the motion on the primary ground that the trial court lacked jurisdiction to grant the requested relief in the absence of some pending recognized proceeding. The People also argued that the request imposed an undue burden on the various agencies and departments specified.

After hearing argument, the trial court made the order set out above. The People sought a writ of mandate to vacate the order and this court issued an order to show cause.[4]

---

[2] All subsequent statutory references are to the Penal Code unless otherwise specified.

[3] Penal Code section 1054.9 provides that "(a) Upon the prosecution of a postconviction writ of habeas corpus or a motion to vacate a judgment in a case in which a sentence of death or of life in prison without the possibility of parole has been imposed, and on a showing that good faith efforts to obtain discovery materials from trial counsel were made and were unsuccessful, the [trial] court shall, except as provided in subdivision (c), order that the defendant be provided reasonable access to any of the materials described in subdivision (b). [¶] (b) For purposes of this section, 'discovery materials' means materials in the possession of the prosecution and law enforcement authorities to which the same defendant would have been entitled at time of trial."

[4] MORALES asserts that writ review is not necessary because the People have an adequate remedy at law by appeal. Our issuance of the order to show cause reflects our determination that the remedy at law is *not* adequate, and we decline to revisit the issue. (See *Marron v. Superior Court* (2003) 108 Cal.App.4th 1049, 1056.) We will discuss his other procedural objections below.

DISCUSSION

First, we have no quarrel with Morales's description of the delays in the death penalty review process. However, the issue is not whether the procedure sought by Morales is desirable, but whether it is authorized by law.

In addition to arguing that writ review is unnecessary (see fn. 4, *post*), Morales focuses on procedural challenges to the People's attempt to overset the ruling. He argues first that the People failed to "specifically [] allege, or allege sufficient facts to make even a prima facie showing, that it has a beneficial interest or substantial right that will be substantially damaged if writ relief is denied . . . ." The gist of this argument is that the public agencies and departments listed in the motion did not object and therefore the People may not do so.

There are two flaws in this argument. The first is that consent (and a fortiori inaction) cannot confer jurisdiction where none exists. (See *People v. Alanis* (2008) 158 Cal.App.4th 1467, 1473 [also involving postjudgment trial court proceedings while defendant's appeal was pending].) The second is that the People *are* an interested party as multiple categories *do* impose a duty on the People to preserve evidence. For example, item "c." describes "[a]ll prosecutorial and law enforcement reports, notes, tape recordings, . . ." while item "f." specifies "[a]ll writings or other records relating to the decision by the San Bernardino County District Attorney's Office to seek the death penalty, . . ." and "t." refers to "[a]ll criminal files relating to other suspects and/or witnesses related to this case including the following: [names] whether in the possession

4

or control of the San Bernardino County Superior Court, the San Bernardino County District Attorney's Office . . . ." Thus, the People, acting through the district attorney, were directly affected by the order and were entitled to appear and oppose it both in the trial court and before this court.[5] Furthermore, the order would inevitably oblige the affected departments and entities to conduct a search of records and devise some method of segregating any materials which might conceivably fall within the order.

Morales also complains that the People inadequately allege the justification for extraordinary relief as set out in Code of Civil Procedure, sections 1085 and 1086. To the extent that this reflects the position that the People are not a party "beneficial[ly] interest[ed]" and that they have an adequate remedy at law, we have explained our disagreement.[6] To the extent that Morales challenges the technical adequacy of the pleading with respect to alleging these elements, we are unpersuaded. First, any such objection to the pleading is properly raised by demurrer, not argument. (See *Gong v. City*

---

[5] It may also be questioned whether the *mailed* notice of the motion was sufficient to subject the various agencies and departments to the court's authority. The usual way of acquiring personal jurisdiction is by personal service; in the somewhat analogous context of compelling the attendance of a witness or the production of evidence, a subpoena must be personally served. (Code Civ. Proc., § 1987.)

[6] Morales also sets up a straw man by reasoning that the People's opposition is based upon the notion that they (and the other agencies) have a " 'substantial right' to *destroy* the subject materials . . . before any discovery order can be made," and then argues that this "subverts" the purposes of section 1054.9 and is "incompatible with RPI's most basic fundamental rights to fairness and heightened reliability in the death judgment against him." We do not read the People's arguments as evincing any zeal to destroy any evidence, but merely as objecting in principle to the court's attempt to issue an unjustified order imposing not-insignificant burdens.

*of Fremont* (1967) 250 Cal.App.2d 568, 573.)  Second, where the petition contains sufficient facts from which the omitted facts can be gleaned, we have discretion to consider it despite technical inadequacies.  (*Chapman v. Superior Court* (2005) 130 Cal.App.4th 261, 271-272.)  The district attorney's apparent unfamiliarity with pleading formats does not require us to refuse relief where warranted.

Morales then argues that the petition must be denied because the People cannot plead and prove that the trial court had a clear duty to deny his motion for lack of jurisdiction.  It is true that it is often said that mandate issues to compel a lower court or officer to perform a "clear duty" (Code Civ. Proc., § 1085; see *City of King City v. Community Bank of Central California* (2005) 131 Cal.App.4th 913, 925) and of course it cannot control the exercise of discretion.  (*City of Oakland v. Superior Court* (1996) 45 Cal.App.4th 740, 751.)  But mandate *is* available to correct abuses of discretion (*Alejo v. Torlakson* (2013) 212 Cal.App.4th 768, 780) and an error of law *is* an "abuse of discretion" correctable by mandate.  (*People v. Superior Court (Humberto S.)* (2008) 43 Cal.4th 737, 746.)  As we find a clear error of law, mandate will lie.

We now explain our reasoning on the merits.  First, it must be noted that this is *not* a request for actual postconviction discovery under section 1054.9.  It is quite true that although that statute refers to such discovery " '[u]pon the prosecution of a postconviction writ of habeas corpus or a motion to vacate a judgment,' " (*In re Steele* (2004) 32 Cal.4th 682, 690-691) this does not mean that an actual petition or motion must have been filed at the time discovery is sought.  It is sufficient if such a request for

collateral relief is proposed or in preparation. However, since this is not a request under section 1054.9[7] the permissiveness of that statute does not govern this case.

Before the enactment of section 1054.9, the Supreme Court in *People v. Gonzalez* (1990) 51 Cal.3d 1179 (*Gonzalez*) dealt with an effort by a capital defendant, pending resolution of his appeal, to obtain official file information about a jailhouse informant who had testified against him at trial. In that case, the court held that "[t]he trial court lacked jurisdiction to order 'free-floating' postjudgment discovery when no criminal proceeding was then pending before it." (*Gonzalez*, at p. 1256.) Quoting from previous authority, it explained that " 'a discovery motion is not an independent right or remedy. It is ancillary to an ongoing action or proceeding. After the judgment has become final, there is nothing pending in the trial court to which a discovery motion may attach.' . . . [¶] [This] reasoning applies equally where, as here, an appeal remains undecided." (*Id.* at p. 1257.) Stressing the presumptions of validity applicable to a collateral attack on a criminal judgment, the court held that "[t]he state may properly require that a defendant obtain some concrete information on his own before he invokes collateral remedies against a final judgment." (*Id.* at p. 1260.) Thus, discovery would only be available once the reviewing court (the Supreme Court) issued an order to show cause upon a finding that a habeas corpus petition stated a prima facie case for relief. (*Id.*

---

[7] Such a request must show that the materials either *were* provided to the defendant at trial, or *should* have been provided pursuant either to a discovery order in the case or the prosecution's constitutional obligations. (See *In re Steele*, *supra*, at p. 697.) It must also show "that good faith efforts to obtain discovery materials from trial counsel were made and were unsuccessful . . . ." (§ 1054.9, subd. (a).)

7

at pp. 1260-1261.)  *Gonzalez* was then followed by *People v. Johnson* (1992) 3 Cal.4th 1183, 1258, and in *People v. Picklesimer* (2010) 48 Cal.4th 330, 337 (*Picklesimer*), the court again confirmed that a motion is not an independent remedy but implies the pendency of an ongoing action.[8]

The court in *In re Steele*, *supra*, 32 Cal.4th 682 recognized that section 1054.9 affected the rule of *Gonzalez* to the extent covered by the statute.  But the court's comment was that section 1054.9 "modifies" and reflects a "modification" of the rule, not that *Gonzalez* retains no further validity.  (*In re Steele, supra*, at p. 691.)  The court stressed that, in the language of *Gonzalez*, even the new legislation "does not allow 'free-floating' discovery asking for virtually anything the prosecution possesses."  (*In re Steele, supra*, 32 Cal.4th at p. 695.)  It also commented that section 1054.9 "imposes no preservation duties that do not otherwise exist."  (*In re Steele, supra*, at p. 695.)

Morales argues that the order was authorized by *Wisely v. Superior Court* (1985) 175 Cal.App.3d 267, 270, in which the appellate court found it "fundamentally unfair" to deny discovery to a defendant *who had been granted a new trial*, while the People's appeal of that order was pending.  The reasoning of *Wisely* clearly did not impress the Supreme Court in *Gonzalez*, which found it "inapposite," "whatever its merits,"

---

[8] *Picklesimer, supra,* 48 Cal.4th 330 involved the efforts of a petitioner long ago convicted of voluntary oral copulation with a 16- or 17-year-old minor (§ 288a, subdivision (b)(1)) to remove the requirement of mandatory sex offender registration after the court found an equal protection violation in *People v. Hofsheier* (2006) 37 Cal.4th 1185.  *Picklesimer* holds that relief must be sought by a petition for writ of mandate.

(*Gonzalez, supra*, 51 Cal.3d at p. 1257) because the new trial order at least provided an arguable basis for continuing jurisdiction.[9] Here, although Morales claims that the preservation order is essential to protect his right to pursue collateral relief by habeas corpus, there is simply no pending case or proceeding to which the motion can attach. Accordingly, the trial court had no subject matter jurisdiction.

We recognize that if Morales had chosen to proceed by filing a barebones habeas corpus petition, there would at least have been a proceeding to which his request could have attached, and the trial court could have reached the merits.[10] However, counsel has carefully observed the boundaries of his role as counsel on *appeal* and elected not to file a collateral proceeding. We also recognize that some of the materials which he seeks to have preserved and which are not subject to any statutory preservation obligation *may* be of value to him in presenting a claim for relief on habeas corpus. However, our decision is guided by two points: first, that this is not a legislatively authorized motion under

---

[9] The standard rule, of course, is that an appeal deprives the court of jurisdiction going to the merits of the case—that is, anything that might interfere with the appellate court's effective resolution of the case. (*People v. Alanis* (2008) 158 Cal.App.4th 1467, 1472.)

[10] We do not determine whether the issuance of a preservation order would be proper. The scope of the motion appears to have gone far beyond the limits of section 1054.9; it was not established that the materials sought could not be obtained from counsel *or* should have been turned over by the prosecution. Nor was any effort made to explain what information Morales ever hoped to find in more obscure categories which did not visibly fall within the ambit of materials to which he would have been entitled at trial. However, we need not, and do not, attempt to establish the level of "good cause," if any, which could support a preservation order—again, assuming that one could be made.

section 1054.9, and second, that Supreme Court precedent otherwise forbids trial courts from ruling on such a "free-floating" motion as was presented here. We are not at liberty to ignore *Gonzalez*, especially as the court in *Steele* noted the limited extent to which section 1054.9 altered *Gonzalez*'s rule.

Accordingly, we find that the trial court exceeded its jurisdiction in issuing the preservation order and we will issue the writ.

### DISPOSITION

Let a peremptory writ of mandate issue, directing the Superior Court of San Bernardino County to vacate its order for preservation of evidence, and to enter a new order denying real party in interest's motion.

Petitioner is directed to prepare and have the peremptory writ of mandate issued, copies served, and the original filed with the clerk of this court, together with proof of service on all parties.

KING\
J.

We concur:


McKINSTER\
        Acting P. J.


CODRINGTON\
        J.

10

FILED
SAN BERNARDINO COUNTY
SUPERIOR COURT

JUL 0 9 2014

BY _____ DEPUTY

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN BERNARDINO

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JOHNNY MORALES, <br><br> Defendant and Appellant. | Superior Ct. No. FVA 015456 <br><br> (California Supreme Court No. S137307) <br><br> ORDER TO PRESERVE EVIDENCE PENDING AUTOMATIC APPEAL AND RELATED POST CONVICTION PROCEEDINGS |

IT IS THE ORDER OF THIS COURT:

That the San Bernardino County District Attorney, the San Bernardino County Sheriff-Coroner, the Montclair Police Department, the Fontana Police Department, the Colton Police Department, the Corona Police Department, the San Bernardino Police Department (including the San Bernardino Police Department Crime Lab), the San Bernardino County Sheriff's Department, the San Bernardino County Sheriff's Scientific Investigations Division, the San Bernardino County Children and Family Services and the Children's Assessment Center, the San Bernardino County Probation Department, the San Bernardino County Superior Court, the San Bernardino County Jury Commissioner, the San Bernardino County Information Services Department, the San Bernardino County Jail, West Valley Detention Center, California Department of Corrections, the Attorney General of California, and their present and former employees, agents, and representatives, to preserve files, records, evidence and other related items listed herein pending resolution of this automatic appeal and all related postconviction litigation.

By this motion, appellant requests preservation of files, records, evidence and any other items pertaining to the prosecution of this case and relating to the investigation of the

**APPENDIX A**

11

death of Elia Lopez and the robbery of Carlos Gutierrez that occurred on June 9, 2001 in the city of Bloomington, as well as offenses alleged as other-crimes evidence and as aggravating factors during the guilt and penalty phases of appellant's trial, including, but not limited to, the following:

a. All records, documents, and exhibits, including the reporter's transcript notes of proceedings which pertain to appellant, Johnny Morales (AKA "Mario Morales" and "Jose Arrisa")(DOB: 1/20/78), and *People v. Johnny Morales* (Superior Court Case No. FVA 015456), including confidential Penal Code sections 987.9 and 987.2 records;

b. All items admitted into evidence, or offered into evidence but excluded or withdrawn in this case, whether at the trial or any pretrial proceeding, whether such items were physical, demonstrative, illustrative, written, tape recorded, videotaped, photographed, or of some other type; and whether in possession of the San Bernardino County Superior Court, the San Bernardino County Children and Family Services and the Children's Assessment Center, the San Bernardino County District Attorney's Office, or any other law enforcement agency, including, but not limited to the Fontana Police Department, the Montclair Police Department, the Ontario Police Department, the Corona Police Department, the Colton Police Department, the San Bernardino Police Department, and the San Bernardino County Sheriff's Department, ;

c. All prosecutorial and law enforcement reports, notes, tape recordings, or other memorializations of fruits of law enforcement investigation or witness interviews, all scientific and forensic reports or notes and underlying documentation (including, but not limited to, laboratory notebooks, bench notes, computer printouts, or other recordings of raw data, in whatever media), all photographs and negatives, and all other items that are in any way related to this capital case and that are in the possession of any of the city, county, or state governmental agencies or officials named above, or their agents or employees, including private individuals or institutions retained to render services in connection with this capital case;

d. All notes taken by each and every court reporter in this case, whether in

2

Superior or Municipal Court;

e. All custodial records relating to appellant Johnny Morales (AKA "Mario Morales" and "Jose Arrisa") (DOB: 1/20/78), including but not limited to; all jail records and/or the complete jail packet, which includes any "writings" (as defined in Gov. Code § 6252, subd. (g)), housing records, classification records, disciplinary records, jail visiting logs and records, records of any medical and/or psychiatric treatment or evaluation occurring during appellant's incarceration, and any audiotapes, videotapes, and any other records pertaining to appellant either during or prior to the pendency of this case that are in the possession or control of the San Bernardino County Sheriff's Department, the San Bernardino Police Department, the Fontana Police Department, the Corona Police Department and the Colton Police Department;

f. All writings or other records relating to the decision by the San Bernardino County District Attorney's Office to seek the death penalty in *People v. Johnny Morales* (Superior Court Case No. FVA 015456), including, but not limited to all policy manuals, regulations, guidelines, policy statements, internal memoranda and other writings which have been relied upon or promulgated by the San Bernardino County District Attorney's Office pertaining to the procedure by which a decision is made as to whether to charge special circumstances and/or seek the death penalty, and any and all documents, writings, records, memoranda, or notes relating to the decision to allege special circumstances and to seek the death penalty in this capital case;

g. All electronic data pertaining to *People v. Johnny Morales* (Superior Court Case No. FVA 015456) in the possession of or maintained by the San Bernardino County Information Services Department, including any email communications;

h. All records or documents maintained or controlled by the San Bernardino County Jury Commissioner pertaining to the selection of the venire or any other matter involving the case of *People v. Johnny Morales* (Superior Court Case No. FVA 015456). Any records, manuals, standard operating procedures, or other documents maintained or controlled by the San Bernardino County Jury Commissioner involving procedures and

3

practices regarding the selection of jury venires, including county-wide jury venires, which were in effect in the years 2002-2004;

i. All records maintained or controlled by the San Bernardino County Probation Department which pertain to appellant Johnny Morales(AKA "Mario Morales" and "Jose Arrisa")(DOB: 1/20/78).

j. All materials controlled or maintained by the San Bernardino County Sheriff-Coroner's Department (or any private contractor personnel) pertaining to the investigation and autopsy of the death of Elia Torres Lopez on or about June 9, 2001;

k. All records, documents, exhibits, investigative reports, and jail records relating to prior investigations or prosecutions of appellant Johnny Morales, (AKA "Mario Morales" and "Jose Arrisa") (DOB 1/20/78), including but not limited to those pertaining to the following; San Bernardino County Case: *People v. Johnny Morales*, San Bernardino Court Case No: FVA011012; *People v. Johnny Morales*, Fontana Municipal Court Case No: MVA 021611; *People v. Johnny Morales*, Fontana Municipal Court Case No: MVA017382; whether in the possession or control of the San Bernardino County Superior Court, the San Bernardino County District Attorney's Office, or any other law enforcement agency, including, but not limited to the Fontana Police Department, the Montclair Police Department, the Ontario Police Department, the Corona Police Department, the Colton Police Department, the San Bernardino Police Department, and the San Bernardino County Sheriff's Department.

l. All criminal files relating to witnesses appearing in this case including the following people: Cesar Alban, Anthony Casas, Xiomara Escobar, Carlos Gutierrez, Michael Kania, Maria S. Lopez, Mayra Lopez, Margarita Martinez, Daniel J. Mendoza, Angel I. Morales, Marcela Ochoa-Martinez, Yolanda Riech, Alejandra Sanchez, Brianda Sanchez, Jennifer Sanchez, Joe Sanchez, Frank P. Sheridan, Josefina T. Tadeo, Brad Toms, Elda Velasquez and Kenneth Wolf.

m. All California Department of Corrections records regarding Johnny Morales (AKA "Mario Morales" and "Jose Arrisa")(DOB 1/20/78) including, but not limited to,

4

West Valley Detention Center records.

n. All notes taken by each and every court reporter, whether in Superior or Municipal court, during the proceedings of appellant's co-defendant, Xiomara Escobar (San Bernardino County Case No. FVA 015456), in which appellant was not present.

o. All records, manuals, standard operating procedures, policies or documents maintained or controlled by the San Bernardino County Indigent Defense Program pertaining to the selection of and qualifications for members of the county conflict panel between 2001 to 2004; and any other records or other documents maintained or controlled by the program involving the appointment and payment of counsel in the case of *People v. Johnny Morales* (Superior Court Case No. FVA 015456).

p. All records, manuals, standard operating procedures, policies or documents maintained or controlled by the San Bernardino County Indigent Defense Program, San Bernardino Superior Court and the Law Offices of Earl Carter pertaining to the procuring and awarding of contracts for the operation of the San Bernardino County Conflict Panel. selection of and qualifications for members of the county conflict panel between 2001 to 2004;

q. All records, manuals, standard operating procedures, policies or documents maintained or controlled by the San Bernardino County Superior Court pertaining to the appointment of counsel for indigent defendants from the county conflict panel between 2001 to 2004; and any other records or other documents maintained or controlled by the court involving the appointment and counsel in the case of *People v. Johnny Morales* (Superior Court Case No. FVA 015456).

r. All prosecutorial and law enforcement reports, notes, tape recordings, or other memorializations of fruits of law enforcement investigation or witness interviews, all photographs and negatives, and all other items that are in any way related to *People v. Wayne Rozenberg* (Superior Court Case No. FSB046236) and that are in the possession of any of the city, county, or state governmental agencies or officials named above, or their agents or employees, including private individuals or institutions retained to render services

5

in connection with this case;

s. All records, documents, exhibits, investigative reports, and jail records relating to prior investigations or prosecutions of Mario Izaguirre, including but not limited to those pertaining to the following; San Bernardino County Case: *People v. Mario Izaguirre*, San Bernardino Court Case No: FVA022952.

t. All criminal files relating to other suspects and/or witnesses related to this case including the following: Junior Ivan Escobar, Javier Ever Flores (DOB 9/7/79), Marlo Flores (DOB 7/28/78), Melvin Falla, Melvin Hernandez, Jorge Morales, Jossy Remberto Aleman-Cruz (DOB: 6/24/79) (AKA "Jossy Cruz-Aleman" or "Josy" or "Carlos Rodriquez"), Enrique Lujan (AKA "Kuique"or "Kiki"), Henry Lujan (AKA "Garra" or "Garras"), Noe Sevilla-Ochoa, Jorge Luis Sifuentes, Joe Vant and Rigoberto Zavala (AKA "Rico") whether in the possession or control of the San Bernardino County Superior Court, the San Bernardino County District Attorney's Office, or any other law enforcement agency, including, but not limited to the Fontana Police Department, the Montclair Police Department, the Ontario Police Department, the Corona Police Department, the Colton Police Department, the San Bernardino Police Department, and the San Bernardino County Sheriff's Department.

u. All files, reports, notes, tape recordings, other memorializations of fruits forensic interviews of Joe Sanchez, Jennifer Sanchez, Brianda Sanchez, Crystal Izaguirre and David Gutierrez by staff at the San Bernardino County Children's Assessment Center that were in any way related to law enforcement investigation or prosecution of either: (1) the death of Elia Torres Sanchez or (2) the home invasion robbery of Carlos Gutierrez on or about June 9, 2001 whether in the possession or control of the San Bernardino County Children's Assessment Center, the San Bernardino County Superior Court, the San Bernardino County District Attorney's Office, or any other law enforcement agency, including, but not limited to the Fontana Police Department, the San Bernardino Police Department, and the San Bernardino County Sheriff's Department.

v. All records, documents, exhibits, investigative reports, and jail records relating to prior investigations or prosecutions related or pertaining to the following;

16

Corona Police Department Case No: 01-4706, Ontario Police Department Case No: 01-05-1083, Fontana Police Department Case No: 01-5241, Fontana Police Department Case No: C97-9381, Fontana Police Department Case No: C98-08777, San Bernardino County Sheriff Department Case No: 030102609, whether in the possession or control of the San Bernardino County Superior Court, the San Bernardino County District Attorney's Office, or any other law enforcement agency, including, but not limited to the Fontana Police Department, the Ontario Police Department, the Corona Police Department, the San Bernardino Police Department, and the San Bernardino County Sheriff's Department.

Appellant requests that this order for preservation remain in effect until either: (1) thirty days after execution of the death sentence, or (2) non-preservation of such items or materials is approved by a court of competent jurisdiction after at least ninety (90) days written notice of any intention to destroy or allow destruction of such evidence has been given to appellant, his counsel, the San Bernardino County District Attorney, and the Attorney General of California.

Appellant further moves for disclosure by the agencies named in this motion as to whether any of the items or materials mentioned above are in the possession of any other governmental unit, entity, official, employee or former employee and/or whether any of such material has been destroyed.

**SO ORDERED.**

Dated: 7/9/2014

INGRID A. UHLER
JUDGE OF THE SUPERIOR COURT

17

Filed 7/31/15

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

**ORDER**

| | |
|---|---|
| THE PEOPLE, | |
| Petitioner, | E061754 |
| v. | (Super.Ct.No. FVA015456) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | |
| Respondent; | |
| JOHNNY MORALES, | |
| Real Party in Interest. | |

THE COURT

A request having been made to this court pursuant to California Rules of Court, rule 8.1120(a), for publication of a nonpublished opinion heretofore filed in the above matter on July 15, 2015, and it appearing that the opinion meets the standards for publication as specified in California Rules of Court, rule 8.1105(c),

IT IS ORDERED that said opinion be certified for publication pursuant to California Rules of Court, rule 8.1105(b).

KING
J.

We concur:

McKINSTER
Acting P. J.

CODRINGTON
J.

18